## EXCHANGE NATIONAL BANK OF FITZGERALD *v.* PEARSONS-TAFT COMPANY *et al.*

1. Where an owner of land executes a security deed to a creditor to secure the payment of a debt, the equity of redemption remaining in the grantor in the deed, a mortgage executed by him which creates a lien upon the land also covers the equity of redemption and creates a lien upon it.

2. One of the joint makers of a note is not incompetent to act as a non-official witness to a mortgage given to secure the note by the other maker, the mortgage not covering property in which the witness referred to has any interest.

3. The fact that the holder of a security deed which is junior to a note and a mortgage securing payment of the same obtained a judgment and a special lien upon the property conveyed by the security deed and also covered by the mortgage, prior to a judgment based upon the note secured by the mortgage, does not affect the seniority of the lien of the mortgage. Nor would such security be affected by the fact that the grantee in the security deed, who subsequently sued his claim to judgment, by garnishment proceedings brought into court the funds arising from the sale of the property under a power of sale contained in the security deed to a third party.

No. 4323. OCTOBER 18, 1924. REHEARING DENIED NOVEMBER 22, 1924.

Interpleader. Before Judge Eve. Irwin superior court. March 13, 1924.

Edwin Dorminy, on June 30, 1916, obtained a loan of $1500 from the Pearsons-Taft Land Credit Company (hereinafter referred to as the Land Company), and in order to secure the loan executed and delivered to that company a deed to secure the debt, conveying to it ninety acres, more or less, of lot of land No. 136 in the sixth land district of Irwin County, Georgia. On the same date he executed a second deed to the same land as described in the first deed, to secure an indebtedness of $150. The second deed recited that it was given subject to the prior deed above set out, and that said first deed was superior thereto. Both of these deeds were duly recorded in the clerk's office of the superior court of Irwin County. On March 4, 1919, Edwin Dorminy obtained another loan from the Land Company in the sum of $1600, and executed to said company a deed to secure the debt, conveying 100 acres of lot of land No. 135, in the sixth district of Irwin County.

He also, on the same date, executed a second deed to the same land to the same company, to secure an additional indebtedness of $160. This second deed recited that it was given subject to the first deed to secure the loan of $1600. Both deeds were duly recorded. The second deeds, in both instances, contained a power of sale authorizing and empowering the Land Company to sell the lands upon default in the payment of the principal debt secured thereby or any interest instalment thereon. The Land Company did not execute a bond to reconvey in either of the aforesaid loans.

On or about October 1, 1920, Edwin Dorminy and Dan Dorminy made a joint and several promissory note for $3789.10 to the Citizens Bank of Ocilla, Georgia, and to secure the same Edwin Dorminy made a mortgage to the Citizens Bank, describing the lands that he had heretofore conveyed to the Land Company by the security deeds hereinbefore referred to. This mortgage was duly recorded. On January 20, 1921, Edwin Dorminy and Dan Dorminy obtained a loan from the First National Bank of Ocilla, Georgia, in the sum of $4398.12, and executed their promissory note for that sum, and in order to secure the same executed and delivered to the bank a deed conveying the same lands as described in the deeds to the Land Company and other lands, the value of which is now insufficient to pay off said loan. The note signed by Edwin Dorminy and Dan Dorminy was indorsed and delivered to the Exchange National Bank of Fitzgerald, Georgia, by the Citizens Bank of Ocilla. The mortgage did not appear to be transferred, but the Exchange National Bank held the same.

The First National Bank of Ocilla sued on the note to judgment, and obtained a special lien on the lands described in the security deed, at the March term, 1922, of the superior court of Irwin County, on which judgment an execution was duly issued. At the November term, 1922, of the superior court of Irwin County the Exchange National Bank of Fitzgerald sued on its note to judgment against Dan Dorminy and Edwin Dorminy, and had an execution issued thereon, but no special lien was obtained on the lands. On January 25, 1923, the Land Company, after default by Edwin Dorminy in the payment of his loan interest, under and by virtue of the power of sale contained in the second deeds to secure debt, and after full compliance with the terms of said power, sold the lands described in the loan deeds. This sale was advertised, and

the lands were sold subject to the rights of the holders of the first security deeds in favor of the Land Company. This sale covered all of the equity of redemption that Edwin Dorminy had in and to said lands. The property was sold for more than enough to pay off the amounts secured under the second security deeds. After the sale was consummated the First National Bank of Ocilla garnished the Land Company and served McM. McLean, the duly authorized agent of the Land Company who conducted the sale, making the proceedings returnable to the March term of the superior court of Irwin County. To this summons of garnishment the Land Company filed its answer, setting up that it had in its hands the sum of $1725.68, which is the excess after paying off the indebtedness due the company under the sale hereinbefore set out. After filing this answer, the Land Company filed its petition to require all parties who might have a claim on said fund to interplead and set up their claims. The only parties that set up a claim to the fund were the First National Bank of Ocilla and the Exchange National Bank of Fitzgerald. The First National Bank of Ocilla contended that it was entitled to the fund by virtue of its security deed, while the Exchange National Bank of Fitzgerald laid claim to the fund by virtue of the mortgage hereinbefore described. By agreement of the parties the case was tried by the court; and the court held that the claim of the First National Bank of Ocilla was superior to the claim of the Exchange National Bank, and so awarded the fund. The Exchange National Bank excepted.

*A. J. & J. C. McDonald,* for plaintiff in error.

*Rogers & Rogers, Jay & Garden,* and *John P. Knight,* contra.

BECK, P. J. (After stating the foregoing facts.) The defendants in error insist, that Edwin Dorminy having made a mortgage to the Citizens Bank of Ocilla, the paper which was afterwards transferred to the plaintiff in error, Exchange National Bank of Fitzgerald, he had no title to the lands described in the mortgage upon which the instrument purports to create a lien; that the title to the lands was in the Land Company, under their first deed, and an equity was in the same company under their second deed to secure debt; that it was a matter of legal impossibility for Edwin Dorminy to create a mortgage lien on something that he did not have, and the only thing that he had at the time of making the mortgage was a mere equity of redemption, and he could not create

a lien on this by an instrument in the form of a mortgage which purported to create a lien on the land itself. It is conceded that a mortgage lien could have been created upon the equity of redemption, but it is insisted that he did not do this; that the mortgage did not purport to be given on the equity but on the entire interest or title in the property.

The court does not concur in this. While the mortgage referred to did not recite that it was upon the equity, we think the effect of it was to cover whatever interest the mortgagor had in the land. The transfer to the plaintiff in error of the notes secured by the mortgage conveyed to the transferee the benefit of the security. Civil Code, § 4276. In the case of *Citizens Bank of Moultrie* v. *Taylor,* 155 *Ga.* 416 (117 S. E. 247), referring to lands which had been conveyed by a security deed to a named creditor, this court said: "A subsequent incumbrance of the same property by the grantor, whether by security deed or mortgage executed by the grantor named in the prior security deed while he retains his equitable estate in the land, will operate upon that equitable estate." The writer of the opinion cited there, among other cases, the case of *Wood* v. *Dozier,* 142 *Ga.* 538 (83 S. E. 133). But the defendant in error here relies upon the case of *Wood* v. *Dozier;* and while the plaintiff in error, with whose contention we agree, asks that this last case be reviewed and overruled, we do not think it necessary to review it. It is not in conflict with the decision we reach in favor of the party asking the review. That case differs in its facts from the case at bar. In that case the grantee in the security deed executed a bond for reconveyance to the grantor, his heirs, assigns, etc., upon the payment of the debt, and that bond for reconveyance had been transferred to a third party. Besides, the claim of the widow for a year's support on the funds in controversy might have been a material fact for consideration upon the question of award of the funds. In the present case there was no bond for reconveyance. See also, in this connection, the case of *Cook* v. *Georgia Fertilizer & Oil Co.,* 154 *Ga.* 41 (113 S. E. 145). We are of the opinion that the Exchange National Bank of Fitzgerald, the holder of the notes secured by the mortgage, had a prior lien upon the funds.

It is further insisted, however, in this case that the mortgage, prior in date as it is to the security deed to the First National Bank

of Ocilla, was not entitled to recordation, because Dan Dorminy was a joint maker with Edwin Dorminy of the note which is secured by the mortgage. We think, however, that he was competent as a non-official witness. The mortgage, it is true, secures a note of which Dan Dorminy was a joint maker with Edwin Dorminy, but he had no interest in the land that was mortgaged and did not sign the mortgage. Edwin Dorminy owned the land which was mortgaged and was the sole maker of the mortgage. It is true that Dan Dorminy may have had an interest in having the note secured by a lien on Edwin Dorminy's property, but we do not think that this interest disqualified him to act as a non-official witness. Under certain outside authorities he might be disqualified on the ground of interest. From the case of *Peagler* v. *Davis,* 143 *Ga.* 11 (84 S. E. 59, Ann. Cas. 1917A, 232), it appears that a mortgage was executed by one Everett to the Cairo Banking Company, and was attested by two witnesses, one of whom was a notary public. The non-official witness was a stockholder of the mortgagee corporation; and it was insisted that he was incompetent on that account to be an attesting witness. After referring to the case of *Southern-Iron & Equipment Co.* v. *Voyles,* 138 *Ga.* 258 (75 S. E. 248, 41 L. R. A. (N. S.) 375, Ann. Cas. 1913D, 369), wherein it · was held that a stockholder of a corporation bears such financial relation to it as to disqualify him from attesting as a notary a deed to which the corporation was a party, Presiding Justice Evans, who wrote the opinion in the *Peagler* case, said: "It does not follow, however, that a stockholder, though incompetent to take an acknowledgment of the corporation's deed, is likewise incompetent as an attesting witness. There is no reason to extend the public policy which forbids the former so as to include the latter. An unofficial attesting witness does not act under oath of office, and is not selected because of that impartiality of conduct to be presumed of a sworn official. Besides, the statute declares that a 'mortgage must be executed in the presence of, and attested by or proved before, a notary public or justice of any court in this State, or a clerk of the superior court.' Civil Code (1910), § 3257. An individual who is not a party to a mortgage may attest it as a witness. Under the doctrine of corporate entity, the corporation's mortgage is not the mortgage of the stockholder; and it has been held that notwithstanding an acknowledgment of a deed before a

notary, who was at the time a stockholder of the grantor corporation, is not good as an acknowledgment, nevertheless such certification may be allowed to stand for the notary's attestation as a non-official witness. Spink v. Guarantee Bank & Trust Co., 181 Ala. 272 (61 So. 302). We hold that one, though incompetent to take an acknowledgment of a mortgage as a notary because he is a stockholder of the mortgagee corporation, is not incompetent as a non-official witness to the signature of the mortgagor. See Maddox v. Wood, 151 Ala. 157 (43 So. 968) ; 1 C. J. 807."

We do not think that the fact that the First National Bank of Ocilla obtained a judgment on its claim prior to the date of the judgment in favor of the Exchange National Bank of Fitzgerald and that the former bank garnished the Land Company, as recited in the statement of facts, would have any material effect upon the priority of the liens of the contesting parties.

*Judgment reversed. All the Justices concur.*