53

TANNER *v.* WILSON.

No. 11168.   JULY 16, 1936.

*Heath & Heath,* for plaintiff in error.

*Bennett & Bennett, R. A. Moore,* and *H. D. Reed,* contra.

HUTCHESON, Justice.   On February 15, 1934, A. W. Wilson, hereinafter referred to as plaintiff, obtained a judgment in the superior court against Lora Tanner, hereinafter referred to as defendant, for $1379.45, with interest and costs, on a verdict rendered January 19, 1934.   On January 20, 1934, defendant filed her motion for new trial, and supersedeas was granted until final disposition of the motion.   On May 8, 1934, execution was issued based upon the verdict and judgment and recorded upon the general execution docket of the county.   On July 28, 1934, defendant's motion for new trial was overruled.   She brought the case to this court by writ of error, and the judgment overruling the motion for new trial was affirmed.   (*Tanner* v. *Wilson,* 180 *Ga.* 694, 180 S. E 614).   The remittitur was made the judgment of the trial court on June 24, 1935.   On August 2, 1935, the plaintiff paid to the Federal Land Bank of Columbia, holder of a security deed to certain property of the defendant, recorded April 8, 1925, the amount necessary to pay the debt so secured,

and the bank executed to defendant a quitclaim deed for the purpose of levy and sale as provided in the Code, § 39-201, which deed was duly recorded. The execution was levied on the land on August 7, 1935. On August 24, 1935, defendant deposited with the sheriff of the county (the levying officer) her affidavit of illegality, alleging substantially the following grounds: On April 6, 1925, defendant executed to the Federal Land Bank of Columbia the security deed above referred to, conveying the land levied on, to secure a loan of $2000 made to defendant as a farmer under authority of the Federal farm-loan act and amendatory acts; that defendant executed to said bank her note obligating herself to pay said indebtedness in 68 semi-annual installments, with interest at the rate of 5-1/2% per annum, the installments being $65 each, with a final installment of $63.84, the first installment maturing on November 1, 1925, and the second on May 1, 1926, with successive installments on the same respective date of each year thereafter until paid. Said deed and note were executed and accepted with reference to the act of Congress referred to above, and were not accepted subject to any law or act of the State of Georgia. On September 17, 1934, defendant conveyed said land by warranty deed to her son, G. J. Tanner, subject to the outstanding loan deed, and he assumed the payment of the loan. The bank, on being notified of the change of ownership, approved the same and "substituted G. J. Tanner in place of" defendant, and the stock which defendant had purchased in said bank to qualify as a borrower and to partially secure said loan was transferred to G. J. Tanner, but defendant was not finally released from payment of the debt. The quitclaim deed from the bank to the defendant for the purpose of levy and sale is null and void, and was executed without authority of law, in that Code § 39-201 has no application to deeds to secure debt held by the Federal Land Bank of Columbia; said quitclaim conveyance was in violation of the terms of the contract whereby the bank agreed to carry said loan for a period of 34 years from the date thereof, so long as payments were made as contracted for. Code § 39-201, pursuant to which the quitclaim deed was executed, is violative of the due-process clauses of the State and Federal constitutions (Code, §§ 1-805, 2-103), and is violative of the provisions of the State and Federal constitutions (§§ 2-302, 1-134) prohibiting the passage of laws impairing the obligation of contracts. Cer-

tain designated portions of the act of 1894 (Ga. L. 1894, p. 100; Code § 39-201) are in conflict with the provision of the State constitution that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof" (§ 2-1808). The quitclaim conveyance is void for these reasons, and conveyed no title to the defendant for the purpose of levy and sale. The execution is attacked as void on the ground that the judgment on which it is based was rendered, and the execution was issued, while motion for new trial was pending, with supersedeas granted.

The sheriff received the affidavit of illegality, but did not suspend the sale, and the land was sold between the legal hours of sale on the first Tuesday in September, 1935, and was bought in by the plaintiff for $3200. Deed to the plaintiff was executed by the sheriff, and was duly recorded. On September 28, 1935, the sheriff returned the affidavit of illegality into court, and it was filed and placed on the docket for trial at the October term, 1935. When the case was called for trial the defendant offered an amendment in aid of her affidavit of illegality, alleging that she had deposited her affidavit of illegality with the sheriff; that the sheriff received it but did not suspend the sale or return the illegality to the court before the sale; that no notice was given to her by the sheriff that he did not intend to accept it; that in selling the land the sheriff was acting under direction of counsel for plaintiff; that G. J. Tanner (to whom defendant sold the land) and his tenant were in possession and had been notified by the sheriff and the plaintiff to vacate the premises, and upon their failure to do so they will be ousted; that plaintiff is claiming title and the right to immediate possession; that by reason of the fact that the illegality was undisposed of at the time of sale, the property did not bring its full market value of $5000 under normal conditions; that the sale under the execution is void, for the reasons that the sheriff was without authority to sell while the illegality was pending, and that the original illegality set out sufficient grounds to require the sheriff to suspend the sale; that the execution was proceeding illegally in that it had been levied on certain crops belonging to G. J. Tanner and his tenant, as the property of defendant, for the purpose of collecting the balance due on the execution after the application of the proceeds of the sale of the land thereto; and that the de-

fendant had no adequate remedy at law. The defendant prayed that the sheriff be made a party; that the sale be set aside and vacated; that the sheriff's deed be delivered up and canceled; and that the sheriff be enjoined from ousting her grantee from the land, or from putting the plaintiff or his grantee in possession pending final termination of the illegality case. Oath was made by the defendant that the allegations of fact in the amendment were true; that she did not know of the grounds alleged therein when she tendered her original affidavit of illegality; and that the amendment was not made for the purpose of delay.

The court refused to allow the amendment. A motion to dismiss the affidavit of illegality was made, on the grounds (a) that it affirmatively appeared therefrom that defendant, before the levy of the execution, conveyed to G. J. Tanner her interest in the land levied on, and therefore the execution was not proceeding against her property; and (b) that inasmuch as the land had been sold under the execution, and the affidavit of illegality was not returned to the court until after said sale, the questions raised by the affidavit were moot. The motion was sustained by the court, and the defendant excepted.

■ "Affidavits of illegality are, upon motion and leave of court, amendable instanter by the insertion of new and independent grounds: Provided, the defendant shall swear that he did not know of such grounds when the original affidavit was filed." Code, § 39-1005. This section has no particular reference to amendments setting up purely equitable defenses, or amendments praying for ordinary or extraordinary equitable relief, and the right to such amendments must be determined by the law in reference thereto. "The superior courts, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, *such as the nature of the case may allow* or require." Italics ours. § 37-901 (Ga. L. 1887, p. 64). "A defendant to any suit or claim in the superior court, whether such suit be for legal or equitable relief, may claim legal or equitable relief, or both, by framing proper pleadings for that purpose, and sustaining them by sufficient evidence." § 37-905 (Ga. L. 1884-5, p. 36). "Any defendant may also, by proper pleadings and sufficient evidence, obtain the benefit of extraordinary remedies allowed

in equitable proceedings by the superior court or by the judge thereof exercising equity jurisdiction, at such times and on such terms as such remedies are granted by said court or by said judge exercising equity jurisdiction." § 37-906 (Ga. L. 1884-5, p. 36). "Whenever any extraordinary relief or remedy as known in equity is claimed in aid of any action or defense, the same may be claimed from the superior courts or judges thereof either in the original petition and answer, or by amendment thereto by special petition and pleading for that purpose." § 37-907 (Ga. L. 1887, p. 64). "Any person claiming equitable relief may make all necessary parties to secure equitable relief, either at the beginning of his suit or afterwards by amendment. Any defendant may also, if it is necessary to secure complete relief, make. necessary parties." § 37-1005 (Ga. L. 1884-5, p. 36). Section 81-102 of the Code provides that "Nothing in the uniform procedure act (§§ 37-901, 37-907, 81-101, 81-105, 81-109, 81-303, 81-309) shall repeal or affect the mode of any special statutory proceedings, such as . . illegalities," etc. "No additional ground for the invocation of the extraordinary powers of a court of equity was thereby [the passage of the uniform-procedure act] created, and extraordinary remedies are not available in cases where they were not applicable before the passage of the act. *Broomhead* v. *Grant,* 83 *Ga.* 451 [10 S. E. 116]; *Stillwell* v. *Savannah Grocery Co.,* 88 *Ga.* 144 [13 S. E. 963]." *Booth* v. *Mohr,* 122 *Ga.* 333, 336 (50 S. E. 173). The amendment presented by the defendant, in so far as it sought extraordinary equitable relief, was ostensibly in aid of her affidavit of illegality. Code, § 37-907. The purpose and only office of an affidavit of illegality as provided in the Code, § 39-1001, is to arrest executions illegally proceeding against the property of the defendant in fi. fa.; and being purely statutory, it affords no remedy except such as the statute provides. *State* v. *Sallade,* 111 *Ga.* 700, 702 (36 S. E. 922); *Cochran* v. *Whitworth,* 21 *Ga. App.* 406 (2) (94 S. E. 609). And "the court has jurisdiction only to try a case which the statute authorizes a defendant in execution to make." *State* v. *Sallade,* supra. While any number of separate and distinct grounds of illegality may be filed, either originally or by proper amendment, such ground or grounds must allege facts showing that the execution has been issued or is proceeding illegally. The amendment failed to set up any matter showing that the exe-

cution had issued or was proceeding illegally against the property levied on. The land had been sold and the proceeds applied according to the Code, § 39-201. The relief sought by the amendment was that the sale be set aside; that the sheriff's deed pursuant thereto be delivered up and canceled; and that the sheriff be restrained from putting the purchaser at said sale in possession of the land. These can certainly not be said to be matters pertaining to or in aid of the affidavit of illegality, such as could be maintained under such proceeding. This being true, the court in the illegality proceeding had no jurisdiction to grant the relief prayed for. See *Vason* v. *Clanton,* 102 *Ga.* 540 (29 S. E. 456).

■ No sufficient ground of illegality is set out in the amendment by the allegation that the execution is now proceeding, for the balance due thereon, against the crops of G. J. Tanner and his tenant. If this allegation be true, it is a matter about which defendant need give herself no concern, but may allow the real owner to protect, in a proper way, his own property from an improper sale. *Zachry* v. *Zachry,* 68 *Ga.* 158 (4); *State* v. *Sallade,* supra. Nothing here ruled is in conflict with the rulings in *Moore* v. *O'Barr,* 87 *Ga.* 205 (13 S. E. 464), and in *Harris* v. *Woodard,* 133 *Ga.* 104 (65 S. E. 250).

■ As has heretofore been said, the only purpose and office to be performed by an affidavit of illegality is to arrest an execution which is proceeding illegally. After an execution has proceeded to the extent of a sale of the property levied on, the execution and delivery of a deed by the sheriff, and the application of the proceeds of the sale toward the payment of the amount due on the execution, there is no proceeding of the execution to be arrested; and a decision of the questions raised in the illegality, although the illegality may have been presented before the sale and returned to court afterward, could not at that time arrest the execution. Therefore the questions raised therein were moot.

■ The court did not err in refusing to allow the offered amendment, and in dismissing the affidavit of illegality.

*Judgment affirmed. All the Justices concur.*