## 26714. TANNER v. WILSON.

DECIDED JUNE 30, 1938. REHEARING DENIED JULY 15, 1938.

*Heath & Heath,* for plaintiff in error.

*Bennett & Bennett, R. A. Moore,* contra.

BROYLES, C. J. On September 29, 1937, A. W. Wilson filed his motion praying that a judgment nunc pro tunc be entered on a verdict procured by him against Mrs. Lora Tanner in Coffee superior court on January 19, 1934. Mrs. Tanner filed her answer to said motion, and the case came on for trial before the court without the intervention of a jury. The motion and the answer were amended, subject to objection. The plaintiff filed separate general demurrers to the answer and the amendment thereto, and on October 11, 1937, the court sustained these demurrers and ordered that the judgment be entered and "dated nunc pro tunc as of January 19, 1934." Wilson's motion as amended was substantially as follows: 1. On January 19, 1934, at the October, 1933, adjourned term of the superior court of Coffee County, A. W. Wilson obtained a verdict against Mrs. Lora Tanner for $1379.45. 2. On February 15, 1934, "a judgment based upon said verdict was signed by this court, and an execution issued thereon." 3. On "June 3, 1935, the judgment of the lower court was affirmed" *(Tanner* v. *Wilson,* 180 *Ga.* 694, 180 S. E. 614), "the remittitur being received by the clerk of the superior court . . on June 24, 1935." 4. In a subsequent case filed in said court by G. J. Tanner against A. W. Wilson et al., the Supreme Court of Georgia, on May 15, 1937, rendered judgment declaring that all steps in the prior case of A. W. Wilson v. Mrs. Lora Tanner after the rendition of the verdict therein were void, and "because of said ruling it is now necessary and proper that judgment be entered based on said verdict, said judgment to be dated nunc pro tunc as of January 19, 1934."

In her answer Mrs. Lora Tanner admitted paragraphs 1, 2, 3 of the motion, and "all of paragraph four except the language

contained in the last three lines of said paragraph," to the effect that it was necessary and proper to enter up the judgment nunc pro tunc. By paragraphs she further pleaded substantially as follows: 2. The verdict rendered on January 19, 1934, "did not create any lien against respondent . . or against any property she owned or held at that time." At said time she "was owner and in possession of 220 acres of land . . in Coffee County, . . subject only to a deed to secure a debt, executed and delivered by respondent to the Federal Land Bank of Columbia." After "the rendition of said verdict and before any legal judgment had been granted, based upon said verdict creating any lien upon said lands or against respondent, or any property she owned when said verdict was rendered, respondent for a valuable consideration and without notice to her grantee, executed and delivered her warranty deed to G. J. Tanner, conveying said lands to him," and "the rights of G. J. Tanner as an innocent third party has intervened, . . and it would now be inequitable and unjust to him and respondent as warrantor of title to said lands conveyed to him to grant a judgment at this late date, now October, 1937, nunc pro tunc" as of the date of the verdict. 3. That said verdict rendered on January 19, 1934, was based upon an action on promissory notes representing a debt dischargeable in bankruptcy; that in said action the plaintiff also prayed for a special lien on "the lands described in . . said action, contending that plaintiff held a mortgage lien upon said lands;" that respondent then contended, and now contends, that "at the time said alleged mortgages were executed and delivered," they were taken "upon the fee of said lands;" that at said time "the title to said lands . . vested in the Volunteer State Life Insurance Company, same having been conveyed by Harrison Davis, owner at that time, by deed to secure debt to said company," and said title "never thereafterwards became vested in Lora Tanner, the maker of said mortgages, so that the lien of said mortgages could . . attach to the fee of said lands;" that "plaintiff being the holder of said notes . . and said alleged mortgages, and said verdict being based upon said notes, and plaintiff having no security or lien securing said notes, said notes were dischargeable in bankruptcy; that subsequent to the rendition of said verdict and prior to any legal judgment thereon, and at a time when said notes, debt, and verdict were

owned by plaintiff, this respondent, on August 20, 1936, was duly adjudicated a bankrupt, and the plaintiff was scheduled as a creditor and given notice thereof; that on April 26, 1937, respondent . . obtained her discharge in said bankruptcy proceedings, which discharged plaintiff's debt, notes, and verdict, and said verdict now becomes moot, and respondent . . now pleads said discharge against the rendition of any judgment upon said verdict, in that said verdict created no lien within itself."

The gist of the amendment to the foregoing answer is that the verdict of January 19, 1934, was obtained "by fraud and perjured testimony of plaintiff, all unknown to defendant at the time," in that A. W. Wilson testified falsely that he paid Mrs. Sheba Davis $300 in cash for the notes declared upon, and owned them; that this statement was known by the plaintiff to be false when he made it, but respondent did not then know of its falsity, because it was within the knowledge of the plaintiff, and she did not find out the truth until the plaintiff admitted to Marvin Smith and others, after the judgment had been affirmed by the Supreme Court, that he "obtained them from the rightful owner by fraud and promises of purchase, and after obtaining them [said notes] and assignments thereof refused to purchase or redeliver or reassign said notes to Sheba Davis, or to complete said promises of purchase, and has admitted that he never at any time paid Sheba Davis . . therefor one single cent or other thing of value . . for said notes and mortgages;" and that in testifying falsely as stated, A. W. Wilson "perpetrated a fraud on defendant, on Mrs. Sheba Davis, and on said jury, and thereby . . induced the jury . . to render a verdict in his favor, . . and said verdict is null and void, and . . no judgment should now be entered on said verdict."

Mrs. Tanner's amendment to her original answer was defective and subject to Wilson's general demurrer, because it failed to allege that Wilson had been convicted of the perjury with which he was charged, and that the verdict could not have been obtained without his evidence. Code, § 110-706. In *Hutchings* v. *Roquemore*, 171 *Ga.* 359 (155 S. E. 675), the Supreme Court held: "A judgment obtained in a court in this State will not be set aside and declared to be of no effect, although the same was obtained and entered up in consequence of corrupt and wilful perjury, un-

less the person charged with such perjury shall have been thereof duly convicted, and unless it shall appear to the court that such judgment could not have been obtained and entered up without the evidence of such perjured person." To sustain that ruling the court cited the above Code section and the following cases: *Richardson* v. *Roberts,* 25 *Ga.* 671; *Griffin* v. *Skeloe,* 30 *Ga.* 300; *Munro* v. *Moody,* 78 *Ga.* 127 (2 S. E. 688); *Barfield* v. *Birrick,* 151 *Ga.* 618, 623 (108 S. E. 43).

We shall consider next Mrs. Tanner's original answer by paragraphs. The first paragraph, admitting paragraphs 1, 2, 3 of the motion, and all of paragraph 4 except the averment therein that it was necessary that the judgment nunc pro tunc be entered, needs no special consideration. Neither are we impressed with the defense made in the second paragraph of the answer, that at a time when there was no lien against either Mrs. Tanner or any of her property by virtue of the verdict of January 19, 1934 (no legal judgment having then been entered on said verdict), she conveyed to G. J. Tanner by warranty deed the 220 acres of land covered by the mortgage notes declared upon, and that "it would now be inequitable and unjust to him and respondent as warrantor of title to said lands . . to grant a judgment at this late date." On the next day after the verdict involved in this case was procured, Mrs. Tanner moved for a new trial, which resulted in a supersedeas until after the judgment of the trial court had been affirmed on June 13, 1935, and the remittitur from the Supreme Court had been made the judgment of the trial court on June 24, 1935. See *Tanner* v. *Wilson,* 180 *Ga.* 694 (supra). While the original case was pending in the Supreme Court, and while the supersedeas was of force (*Tanner* v. *Wilson,* 184 *Ga.* 628, 192 S. E. 425), Mrs Tanner, on September 17, 1934, made to G. J. Tanner a warranty deed purporting to convey to him her interest (equity of redemption) in the 220 acres of land mortgaged to Wilson, subject to the security deed held by the Federal Land Bank. In this deed to G. J. Tanner the grantee assumed Mrs. Tanner's indebtedness to the Federal Land Bank, and the bank accepted him on the obligation, but without relieving Mrs. Tanner therefrom. When the judgment in the case in which Wilson procured his verdict had been affirmed, and the remittitur from the Supreme Court had been made the judgment of the trial court,

Wilson paid the balance due the Federal Land Bank under its security deed, procured a reconveyance of the land to Mrs. Tanner by the Federal Land Bank for the purpose of levy and sale, and caused the sheriff to levy an execution issued on the judgment of February 15, 1934, on the land in question. On August 24, 1935, Mrs. Tanner interposed her affidavit of illegality, which she sought to amend by asking equitable relief. The trial court refused to allow the equitable amendment, and dismissed the affidavit of illegality on the ground that the questions presented by it were moot. That judgment was affirmed by the Supreme Court on July 16, 1936. *Tanner* v. *Wilson,* 183 *Ga.* 53 (187 S. E. 625). On August 25, 1935, G. J. Tanner filed his equitable petition against A. W. Wilson, the sheriff, and the Federal Land Bank, seeking to enjoin Wilson and the Federal Land Bank from selling the land in question. The judge dismissed the petition on general demurrer, and the Supreme Court reversed that judgment on May 15, 1937, and denied the motion for rehearing on July 21, 1937. It will be observed that the court neither in the case of *Tanner* v. *Wilson,* 180 *Ga.* 694, nor in *Tanner* v. *Wilson,* 183 *Ga.* 53 (187 S. E. 625), passed upon the question as to the invalidity of the original judgment of February 15, 1934, and the subsequent proceedings thereunder; and it was not until the reversal of the judgment of the trial court by the Supreme Court in *Tanner* v. *Wilson,* 184 *Ga.* 628, that it was held that the verdict of January 19, 1934, created no lien on the land in question, and that subsequent proceedings were nugatory because of the supersedeas. The court's rulings in the case last cited were apparently based upon the assumption that G. J. Tanner was an innocent purchaser as alleged in his petition.

In the first place the pleadings fail to show that Wilson was guilty of unnecessary delay in bringing his proceedings to have a nunc pro tunc judgment entered on his verdict. The following facts appear from the record in the original case in which Wilson procured his verdict of January 19, 1934: The three notes declared upon were dated October 17, 1924, and were duly recorded on September 12, 1927. For value received, Sheba Davis, the payee in the notes, on October 10, 1931, transferred and assigned to A. W. Wilson all of her "right, title, interest, and equity in and to the within and foregoing promissory notes and mortgage" (Mrs. Lora Tanner, the maker of the mortgage notes, having incorpo-

rated therein a mortgage on said 220 acres of land to secure the debt, each note reciting that "there is no previous lien or mortgage existing on same"). Each of the assignments of the mortgage notes to Wilson by Sheba Davis was duly recorded on January 16, 1933.

"Where, by inadvertence, counsel fail to enter up judgment on a recovery in an action of trespass vi et armis, within four days after adjournment of the court, the court may, at a succeeding term, on due notice to the defendant, grant an order to enter up the same nunc pro tunc." *Kelso* v. *Hill, 58 Ga.* 364. "The lapse of two years from the rendition of the verdict will not prevent the entering of a judgment thereon nunc pro tunc, upon proper application and notice." *Chapman* v. *Chattooga Oil-Mill Co., 22 Ga. App.* 446 (3), 449 (96 S. E. 579). It is evident that ordinarily the law designs that a judgment follow a verdict, and that in the instant case Wilson followed the proper procedure. Under the facts pleaded in the second paragraph of Mrs. Tanner's answer, we are satisfied that it would be neither "inequitable" nor "unjust" to G. J. Tanner as an alleged innocent purchaser of the land in question from Mrs. Tanner, or to Mrs. Tanner as warrantor of the title to the land, to allow the judgment to be entered up nunc pro tunc as of the date of the verdict of January 19, 1934. Especially is this so since G. J. Tanner is not a party to this suit. "Generally a judgment entered nunc pro tunc relates back to the time when it should have been entered, and completes the record. Where there are no intervening equities, the judgment so entered will sustain a plea of res adjudicata between the parties, as to the matter involved in the litigation." *Walden* v. *Walden, 128 Ga.* 126 (10) (57 S. E. 323). See also *Perdue* v. *Bradshaw, 18 Ga.* 287, where it was held that the common-law rule, providing that "when a verdict has been obtained at common law, and an appeal entered without judgment signed upon the said verdict, judgment shall not afterwards be signed further back than the time of disposing of said appeal," should be "so far modified as to allow a nunc pro tunc judgment; but not to prejudice the intermediate rights of third persons." In *Tanner* v. *Wilson, 184 Ga.* 628 (supra), where G. J. Tanner was the plaintiff in error, and which was a case in equity, said Tanner pleaded an intervening equity. In the instant case G. J. Tanner

is not a party. He apparently did not desire to intervene in this case, and certainly it is his privilege to protect any rights he may have, when and in such manner as he chooses. Indeed, it appears from the record that he has made such a choice by instituting proceedings to protect his alleged rights to the 220 acres of land involved in this case. See *Tanner* v. *Wilson*, 184 *Ga.* 628 (supra).

We come next to consider on general demurrer, the striking of paragraph 3 of the defendant's answer. In this connection we state first that we find no merit in the contention made in counsel's brief that Wilson is estopped to rely on his mortgage because, in his original action, he sought (unsuccessfully) to establish a special lien on the land involved, and the Supreme Court dismissed his cross-bill of exceptions. See *Tanner* v. *Wilson*, 180 *Ga.* 694 (supra). Neither do we view favorably the contention of counsel for Mrs. Tanner that a judgment should not be granted to Wilson, because at the time he took his mortgage "on the entire fee of the land" there was an outstanding security deed covering the land described in the mortgage. In *Wood* v. *Dozier*, 142 *Ga.* 538 (83 S. E. 133), the grantor in the first security deed took a bond for the reconveyance of the property on payment of the debt, and, when he subsequently mortgaged the same land, retained said bond to reconvey. He later conveyed the same property to another person to secure a debt, and at the same time he transferred to that person the bond to reconvey. In the instant case no bond to reconvey was involved, and the following cases control the question at issue adversely to the contention of counsel for the plaintiff in error: *Citizens Bank of Moultrie* v. *Taylor*, 155 *Ga.* 416 (117 S. E. 247) ; *Exchange National Bank of Fitzgerald* v. *Pearsons-Taft Co.*, 159 *Ga.* 168 (125 S. E. 377). See also *Beckom* v. *Small*, 152 *Ga.* 149 (108 S. E. 542) ; *Cook* v. *Securities Investment Co.*, 184 *Ga.* 544, 550 (192 S. E. 179) ; *Rountree* v. *Finch*, 120 *Ga.* 743 (2) (48 S. E. 132) ; *Thompson* v. *Citizens Bank of Dublin*, 160 *Ga.* 85, 89, 90 (127 S. E. 287). Our view is that Mrs. Tanner's mortgage to Wilson created a valid lien on the grantor's equity of redemption in the land involved, and, the mortgage having been executed much more than four months before the filing of the petition in bankruptcy, that its lien was not affected by the bankruptcy proceedings. On January 19, 1934, Wilson procured a verdict fixing the amount due under his mort-

gage notes; and we find nothing in the respondent's plea and answer to warrant the court in denying to Wilson the right to have a judgment entered on that verdict as prayed. We therefore hold that the court did not err in sustaining the demurrers to Mrs. Tanner's answer as amended, or in entering the judgment nunc pro tunc.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*

ON MOTION FOR REHEARING.

BROYLES, C. J. 1. It is true that this court inadvertently stated in its opinion that in *Tanner* v. *Wilson*, 184 *Ga.* 628, "the trial judge dismissed the petition on general demurrer, and the Supreme Court affirmed the judgment of the trial court on May 15, 1937," whereas the judgment of the trial court was *reversed* by the Supreme Court. We have corrected the same by changing the word "affirmed" to the word "reversed" in the original opinion, so that the quoted clause will read: "the trial judge dismissed the petition on general demurrer, and the Supreme Court reversed the judgment of the trial court." However, this alteration makes no difference in the conclusion reached in the original opinion, since it is apparent that the statement that the "Supreme Court 'affirmed' the judgment of the trial court" was a mere inadvertence which did not affect the decision in the slightest particular. For instance, we stated in the very next sentence that "it was not until the reversal of the judgment of the trial court by the Supreme Court in *Tanner* v. *Wilson,* 184 *Ga.* 628, supra, that it was held that the verdict of January 19, 1934, created no lien on the land in question;" and our original opinion clearly shows that this court acted on the correct premise, to wit, that in the case last cited the Supreme Court *reversed* the judgment of the trial court.

2. Exception is taken to the statement in the original opinion that the Supreme Court's rulings in *Tanner* v. *Wilson*, 184 *Ga.* 628, "were apparently based upon the assumption that G. J. Tanner was an innocent purchaser as alleged in his petition." The foregoing statement is warranted by the very language of the court in the case last cited, for on page 635 of that decision the court said: "Under the allegations of the petition, the plaintiff was *a bona fide purchaser without notice and for value,* and at a time when there was no lien on the premises by reason of such verdict. All action taken by the trial court in that case during

the time it was superseded, *as against third parties in good faith,* was void and without effect, the court not having jurisdiction so to act. Therefore the petition set out a cause of action for cancellation of the instruments, and for the relief sought." (Italics ours.)

3. In the original opinion this court stated certain facts as appearing "from the record in the original case in which Wilson procured his verdict of January 19, 1934." The quoted clause clearly shows that those facts were not a part of the record in this case, and were merely stated incidentally as a part of the history of the litigation.

4. The remaining grounds of the motion for rehearing are without merit.

*Rehearing denied. MacIntyre and Guerry, JJ., concur.*