### 51645. GENERAL MOTORS ACCEPTANCE CORPORATION v. MILLER et al.

PANNELL, Presiding Judge.

General Motors Acceptance Corporation, on March

18, 1975, brought a foreclosure action pertaining to an automobile against William J. Miller and Tommy Hinson, seeking a writ of possession for the automobile generally and a judgment for its debt in the amount of $5,707.58 as against Miller. See Ga. L. 1974, pp. 398, 403, as amended by Ga. L. 1975, pp. 1213, 1215; Chapter 67-7 of Ga. Code Ann. A default judgment was entered against Miller and a jury verdict rendered in favor of Hinson. G. M. A. C. appeals, enumerating error on the overruling of its motion for new trial and for judgment notwithstanding the verdict.

It appeared from the evidence that Miller, representing himself to be a resident of North Carolina, purchased the new automobile from Rogers Little Pontiac, Inc., of that state, and executed and delivered to it a security instrument securing the purchase price of said automobile, which was signed and dated May 27, 1974, this in ink, although the request for insurance contained in the contract was signed by Miller in ink and dated "5-24-74" in type. A North Carolina certificate of title was obtained in the name of Miller, issued "6-12-74," which showed General Motors Acceptance Corporation, P. O. Box 840, Charlotte, N. C." as a "first lien holder" under an instrument dated "5-24-74" with no other lienholders shown. Subsequently, Hinson purchased the automobile from one Bobby James, a used automobile dealer, with a Canton, Georgia address.

The application for title in Hinson's name with the Cartersville Bank (Georgia) as holder of a security interest based on a Georgia title certificate issued to Miller on October 7, 1974, showing no lienholders with the transfer thereon signed by Miller in blank, was submitted October 23, 1974, but Hinson's application was returned on November 11, 1974, due to the existence of the prior North Carolina certificate with General Motors Acceptance Corporation listed as first lienholder, news of which had surfaced at that time. There was evidence it was not unusual after purchase to fill out a security interest contract, apply for a title, subject to the security interest contract, and then sign the contract and deliver the automobile. There is no direct evidence that this is what happened in the present case. The evidence

authorized a finding the defendant Hinson is a bona fide purchaser for value.

1. The portion of the North Carolina registration and title law introduced in evidence, so far as material, reads:

"§ 20-58. Perfection by indication of security interest on certificate of title. — Except as provided in G.S. 20-58.8, a security interest in a vehicle of a type for which a certificate of title is required shall be perfected only as hereinafter provided. (1) If the vehicle is not registered in this State, the application for notation of a security interest shall be the application for certificate of title provided for in G.S. 20-52. (2) If the vehicle is registered in this State, the application for notation of a security interest shall be in the form prescribed by the Department, signed by the debtor, and containing the amount, date and nature of the security agreement, and the name and address of the secured party from whom information concerning the security interest may be obtained. The application must be accompanied by the existing certificate of title unless it is in the possession of a prior secured party. If there is an existing certificate of title issued by this or any other jurisdiction in the possession of a prior secured party, the application for notation of the security interest shall in addition, contain the name and address of such prior secured party." . . . (1937, c. 407, s. 22; 1955, c. 554, s. 2; 1961, c. 835, s. 6; 1969, c. 838, s. 1.) Note G. S. 20-57.8 contains no exceptions applicable here.

"§ 20-58.1. Duty of the Department upon receipt of application for notation of security interest. — (a) Upon receipt of an application for notation of security interest, the required fee and accompanying documents required by G. S. 20-58, the Department, if it finds the application and accompanying documents in order shall either endorse upon the certificate of title or issue a new certificate of title containing, the name and address of each secured party, the amount of each security interest, and the date of perfection of each security interest as determined by the Department. The Department shall deliver or mail the certificate to the first secured party named in it and shall also notify the new secured party

that his secured interest has been noted upon the certificate of title..." (1961, c. 835, s. 6; 1969, c. 838, s. 1.)

"§ 20-58.2. Date of perfection — If the application for notation of security interest with the required fee is delivered to the Department within ten days after the date of the security agreement, the security interest is perfected as of that date. Otherwise, the security interest is perfected as of the date of delivery of the application to the Department. (1961, c. 835, s. 6; 1969, c. 838, s. 1.)"

It appears from this law of North Carolina that the certificate of title held by General Motors Acceptance Corporation has a proper notation of its security interest entered thereon. Under these circumstances it will be assumed that the procedural requirements of the statute of North Carolina were complied with (*Ga. Cas. Co. v. McRitchie*, 45 Ga. App. 697 (166 SE 49)) and that a valid perfection of G. M. A. C.'s security interest and the recordation thereof was obtained under the laws of North Carolina.

2. Such a valid security interest will be recognized and enforced under the laws of this state subject to the conditions therein specified. Section 11 of the Act of 1962 (Ga. L. 1962, pp. 79, 85) enacted a new. Section 21 to the Motor Vehicle Certificate of Title Act (Ga. L. 1961, pp. 69, 83) and which was subsequently amended by Ga. L. 1965, pp. 304, 311 and Ga. L. 1969, pp. 92, 93, and codified in the Ga. Code Ann. as § 68-421a. Subsections (d), (2), (3), (4) provide that "If the security interest or lien was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply: (A) If the name of the holder of a security interest or lien is shown on an existing certificate of title issued by that jurisdiction, his security interest or lien continues perfected in this State. (B) If the name of the holder of a security interest or lien is not shown on an existing certificate of title by that jurisdiction, the security interest or lien continues perfected in this State for six months after a first certificate of title of the vehicle is issued in this State, and, also, thereafter if, within the six-month period, it is perfected in this State. The security

interest or lien may also be perfected in this State after the expiration of the six-month period; in that case perfection dates from the time of perfection in this State. (3) If the security interest or lien was not perfected under the law of the jurisdiction where the vehicle was when the security interest was created or the lien attached, it may be perfected in this State; in that case, perfection dates from the time of perfection in this State. (4) A security interest or lien may be perfected under paragraph (2) (B) or paragraph (3) of this subsection either as provided in subsection (b) or by the holder of the security interest or lien delivering to the commissioner a notice of the security interest or lien in the form the commissioner prescribes and the required fee."

The question here, based upon the enumerations of error, is whether the evidence demands finding the "vehicle was" in the State of North Carolina "when the security interest attached." While the evidence on the security instrument itself indicates that the buyer resided in North Carolina and the dealer resided in North Carolina and this may create a strong presumption that the automobile was in North Carolina at the time the lien attached, neither the instrument itself so recites, nor is there any proof aliunde the writing or the circumstances above that it was in the State of North Carolina at that time. No law of North Carolina is called to the attention of this court or the court below indicating that the automobile must be in North Carolina for a title certificate to be applied for and issued, so no presumption can be indulged in reference thereto. There was evidence adduced from which it might have been found that the purchaser was not a resident of North Carolina at the time, although there is no evidence to dispute the residence of the dealer as recited in the security instrument. Under these circumstances, there was no error in refusing to direct the verdict for the General Motors Acceptance Corporation, nor in overruling the motion for new trial. Under the evidence, and for these reasons, the verdict in behalf of the defendant was authorized.

3. No question was raised either in the court below or in this court on appeal as to whether an action to foreclose

on personal property under the statutory proceeding against a person, not a debtor under the security instrument and solely for the purpose of recovery of the property, is one appropriately comprehended and authorized under the statute. Ordinarily where a remedy is statutory it affords no remedy except such as the statute provides. *Tanner v. Wilson,* 183 Ga. 53 (187 SE 625); *State of Ga. v. Sallade,* 111 Ga. 700, 702 (36 SE 922); *Cochran v. Whitworth,* 21 Ga. App. 406 (2) (94 SE 609). However, in view of the rulings made we do not deem it essential that this question be ruled upon.

*Judgment affirmed. Marshall, J., concurs. Evans, J., concurs in the judgment only.*

ARGUED JANUARY 6, 1976 — DECIDED MARCH 16, 1976.

*John G. McCullough,* for appellant.
*White & Crane, J. Paul Jones,* for appellees.