## 56119. RIVIERA EQUIPMENT, INC. v. OMEGA EQUIPMENT CORPORATION.

SHULMAN, Judge.

Omega Equipment Corporation (hereinafter "Omega") held a security interest in certain equipment purchased from Omega by Riviera Equipment, Inc.

(hereinafter "Riviera"). Alleging a default in the loan secured by the security agreement, Omega filed a petition to foreclose the security agreement. Before the hearing on the petition, the parties entered into a consent order which granted Omega a writ of possession entitling it "to immediate possession of all property (including accessions and attachments thereto) described in the Security Agreement." A description of the secured property was attached to and made part of the security agreement. That attachment described the property as follows: "1. One Thomsen Model 745 Concrete Pump, Serial 74555. 2. One Thomsen Model 745 Concrete Pump, Serial 74507."

Pursuant to the consent order, Riviera surrendered the two pumps, each mounted on a GMC truck. Prior to a scheduled and advertised sale of the equipment by the DeKalb County Marshal's office, Riviera filed an affidavit of illegality and a motion to stay the sale, alleging that the trucks were not secured property and that their sale was not authorized. After a hearing, the trial court dismissed the affidavit of illegality and denied the motion to stay the sale. This appeal is from the order containing both those rulings. For an earlier dispute between these parties involving the security agreement and the consent order, see *Riviera Equipment, Inc. v. Omega Equipment Corp.,* 145 Ga. App. 640 (244 SE2d 139).

1. The affidavit of illegality filed by appellant makes no reference to a code section authorizing such an affidavit, but appellant filed with the affidavit of illegality an affidavit of poverty referring to the provision therefor in Code Ann. § 67-803. Appellee's counsel pointed out to the trial court that Code Ann. Ch. 67-8 had been repealed (see Ga. L. 1974, pp. 398, 404) and asserted that there was no provision elsewhere for the use of an affidavit of illegality to halt an execution proceeding on a writ of possession issued pursuant to a proceeding under Code Ann. Ch. 67-7. It is apparent from the record that appellee's argument was the basis of the trial court's dismissal of appellant's affidavit of illegality. We find that dismissal erroneous.

Prior to 1974, there were two separate provisions in the Georgia Code for affidavits of illegality, with two very

different purposes. Code Ann. Ch. 67-8 provided for affidavits of illegality for the purpose of raising defenses to the foreclosure of mortgages on personalty. Under the provisions of Code Ann. Ch. 67-7 as it then existed, a secured creditor was granted an "execution directed to all and singular the sheriffs, or their lawful deputies, and coroners, commanding the sale of the mortgaged property . . ." upon the filing of an affidavit. Former Code Ann. § 67-701. Since the execution was issued ex parte, with no requirement of notice, a debtor's only means of contesting the foreclosure was to file an affidavit of illegality which postponed the sale until the legality of the execution could be determined in the court which issued the execution. Former Code Ann. § 67-803.

The other provision for an affidavit of illegality was, and still is, found in Code Ann. § 39-1001. That section provides that any person against whose property a levy has been made can stop the sale of the property if the execution was issued illegally or is proceeding illegally by filing an affidavit setting out the cause of the illegality. If the plaintiff in execution traverses the affidavit, the issue is thereby joined and submitted to a jury. Code Ann. § 39-1006.

In *Owen v. Cunningham,* 111 Ga. App. 399, 400 (141 SE2d 912), in the course of deciding whether a written traverse to an affidavit filed under Code Ann. § 67-801 was necessary, this court distinguished the two procedures: "There are two separate sections in our Code which pertain to filing of affidavits of illegality to executions, namely: §§ 39-1006 and 67-801. These sections, although dealing with different types of executions, may be, and apparently have been, confused with each other. Title 39 is applicable to executions issued upon common law judgments (Code § 39-101 provides that '[e]xecutions. . .shall be issued by the clerks of the several courts *in which judgment shall be obtained . . .*') (Emphasis supplied.) Chapter 67-8, on the other hand, applies to defenses to foreclosure of mortgages on personalty."

At page 402 of that same opinion, the court explained the basis of the distinction: "In a case involving a common law judgment, the court has considered the matters raised

by the pleadings and rendered a judgment based thereon, therefore an affidavit of illegality attacking an execution on such a judgment raises an issue which can and will be summarily decided by the court on the basis of the facts already before it unless the plaintiff in fi. fa. desires to obtain a jury trial of the issues raised by the affidavit of illegality by filing his traverse thereto. In a case involving a foreclosure by affidavit of a mortgage on personal property, on the other hand, the levy is instituted by the summary proceeding described in *Bank of Forsyth v. Gammage,* [109 Ga. 220 (34 SE 307)], in which there has been no consideration of the issues by the court prior to the issuance of the execution."

In 1974, the General Assembly completely revised the procedure in Code Ann. Ch. 67-7 for foreclosing mortgages on personalty, providing for notice to the defendant and, if the defendant answers, a hearing at which the defendant can contest the foreclosure. Ga. L. 1974, p. 398 et seq. Those provisions rendered Code Ann. Ch. 67-8 superfluous and it was repealed. Ga. L. 1974, pp. 398, 404.

The revision of Code Ann. Ch. 67-7 rendered meaningless the distinction noted in *Owen* between the execution issued in a foreclosure of a mortgage on personalty and the execution issued on a common law judgment. Now it is true of both executions that "the court has considered the matters raised by the pleadings and rendered a judgment based thereon." *Owen,* supra, p. 402.

Since the legislature, in its revision of Code Ann. Ch. 67-7, has done away with the rationale of the distinction set out in *Owen* and the two different types of execution are now essentially on the same footing, we see no purpose to be served by a judicial perpetuation of such distinctions. We cannot, therefore, hold, as appellee urges we must, that an affidavit of illegality will not lie to halt an execution which the defendant in a foreclosure case swears is proceeding illegally.

The fact that appellant referred in its affidavit of poverty to a repealed Code section does not tie the affidavit of illegality irrevocably and fatally to that repealed section. Under Code Ann. Ch. 39-10, the affidavit of illegality need not be accompanied by a bond

unless the defendant desires to maintain possession of the property. *Crayton v. Fox,* 100 Ga. 781 (1) (28 SE 510). Appellant has made no claim to possession of the disputed property during the pendency of this litigation. The affidavit of poverty, therefore, was surplusage. It is abundantly clear from the record that the affidavit of illegality was filed for the purpose for which Code Ann. § 39-1001 makes provision: to halt the execution which appellant avers is proceeding illegally. "It is well established . . . that there is 'no magic in nomenclature, and in classifying pleadings we will construe them to serve the best interests of the pleader, judging the pleading by its function rather than by its name.' [Cit.]" *Frost v. Frost,* 235 Ga. 672, 674 (221 SE2d 567).

Our holding is that (subject to our holding in Division 5, infra) the affidavit of illegality filed by appellant must be considered in the manner prescribed by Code Ann. Ch. 39-10. The trial court's dismissal was based on an erroneous conclusion of law which precluded any consideration of the evidence and must therefore be reversed.

2. Citing *Edenfield v. State of Ga.,* 80 Ga. App. 716 (57 SE2d 288), appellee contends that the affidavit of illegality filed by appellant contains mere conclusions and generalities and is insufficient as a matter of law. We cannot agree. Code Ann. § 39-1001 requires that the affiant "state the cause of such illegality." The affidavit filed by appellant met that requirement by alleging that the property involved was not covered by the security agreement or by any court order. There is no merit to appellee's objection.

3. As an alternative ground for affirming the trial court's dismissal of the affidavit of illegality, appellee argues that the affidavit attempts to go behind the judgment in contravention of Code Ann. § 39-1009. Appellee's argument is not well taken. Appellant has made no attempt to attack the judgment or go behind it at all. The affidavit merely alleges that the property advertised for sale was not the property the marshal was authorized to take and sell. Clearly, as the trial judge and counsel for both parties have noted, it would have been preferable to have determined the exact scope of the

security agreement and the consent order at some time prior to this proceeding. The fact remains, however, that such a determination has not been made. The security agreement lists only pumps; the consent order refers only to the security agreement. Appellant's denial that the trucks are secured to Omega does not constitute a collateral attack of the judgment. On the contrary, appellant recognizes the validity of the judgment and seeks to insure that only the exact terms of the judgment are implemented. We find no attempt to go behind the judgment.

4. Appellee argues that there was sufficient evidence to authorize the trial court to dismiss the affidavit. Since the trial court based its dismissal on an erroneous legal theory which precluded consideration of the evidence (see Division 1 of this opinion), the dismissal cannot be affirmed on the grounds asserted.

5. In a final argument for affirmance of the trial court's dismissal of appellant's affidavit of illegality, appellee cites *Tanner v. Wilson,* 183 Ga. 53 (3) (187 SE 625) for the proposition that the issue is moot because the sale has been accomplished.

There is, however, nothing in the record of this case which establishes that the sale has been accomplished. For that reason, we decline to hold that the issues involved here are moot.

Furthermore, if upon remand it is made to appear that the sale has been accomplished, we do not believe appellant is thereby concluded from pursuing a remedy against appellee in that proceeding. As we said above," '. . . in classifying pleadings we will construe them to serve the best interests of the pleader, judging the pleading by its function rather than by its name.' [Cit.]" *Frost v. Frost,* supra. The ultimate function of appellant's pleading was to maintain the ownership it asserted in the trucks advertised for sale by the marshal. If it is too late to halt the allegedly illegal execution, appellant's pleading can still serve the desired function if construed as a motion to set aside the sale under Code Ann. § 39-1316: "Courts shall have full power over their officers making execution sales; and whenever satisfied that a sale made under process is infected with fraud, irregularity, or error to the

injury of either party, the sale shall be set aside." By so construing appellant's pleading, the same factual issue will be presented for decision: whether the judgment which incorporated by reference the security agreement between the parties authorized the sale of the trucks.

The appellant in *Tanner,* supra, Division 1, amended the affidavit of illegality to include a prayer that the sale be set aside. There, the Supreme Court held that that was not a matter pertaining to an affidavit of illegality and found the trial court without jurisdiction to grant the relief requested. That decision, however, was made in 1936. Since then, the legislature has enacted the Civil Practice Act and the philosophy of our courts has turned from a strict adherence to the technical niceties of pleading toward a liberalized practice determined to place substance above form. Such a philosophical shift is clearly reflected in the language from *Frost v. Frost,* supra, which we have twice quoted in this opinion.

We hold, therefore, that the trial court, upon remand of this case, shall conduct a hearing or hearings as a proceeding under either an affidavit of illegality or a motion to set aside the sale, whichever is appropriate under the circumstances, to decide the central issue of this case: whether the judgment which incorporated by reference the security agreement between the parties authorized the sale of the trucks.

6. Since we have reversed the dismissal of appellant's affidavit of illegality, thereby assuring it of a hearing on the merits of its contentions, there is no need to examine the propriety of the denial of appellant's motion to stay the sale, which motion, after all, was intended to serve the same purpose.

*Judgment reversed with direction. Bell, C. J., and Birdsong, J., concur.*

ARGUED JUNE 26, 1978 — DECIDED OCTOBER 5, 1978.

*Tony Center,* for appellant.
*Alston, Miller & Gaines, Orinda D. Evans, Steven M. Collins,* for appellee.